# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1680

_____

Roberto Barajas

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: September 22, 2017
Filed: December 5, 2017

_____

Before SMITH, Chief Judge, WOLLMAN and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Roberto Barajas appeals the denial of his 28 U.S.C. § 2255 petition alleging ineffective assistance of counsel.  Because the district court[1] correctly found that

_____

[1]The Honorable Leonard T. Strand, Chief Judge, United States District Court for the Northern District of Iowa.

*Teague v. Lane*, 489 U.S. 288 (1989), bars the application of the Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010), we affirm.

## I.

In 2009, Barajas pleaded guilty to knowingly possessing a stolen firearm in violation of 18 U.S.C. § 922(j), an offense categorized as an "aggravated felony" under federal immigration law. 8 U.S.C. § 1101(a)(43)(E)(ii). Federal law provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." *Id.* § 1227(a)(2)(A)(iii). Because Barajas is a citizen of Mexico and otherwise satisfied § 1227(a)(2)(A)(iii), he was deported after serving his four-month term of imprisonment.

In September 2010, Barajas filed a 28 U.S.C. § 2255 petition.[2] He claims that his trial counsel provided ineffective assistance by failing to inform him of the deportation consequences of his guilty plea. At the time Barajas's conviction became final, and even after his sentence ended, it was unclear if an attorney's failure to

---

[2]The Supreme Court explained in *Chaidez v. United States* that a petition for a writ of *coram nobis* is the proper method "to collaterally attack a criminal conviction for a person . . . who is no longer 'in custody' and therefore cannot seek habeas relief under § 2255 or § 2241." 568 U.S. 342, 345 n.1 (2013). Barajas styled his petition as a request for relief under § 2255, believing he was still "in custody" because he had not yet completed his term of supervised release and because less than one year had elapsed since his sentence. Alternatively, he requested a writ of error *coram nobis*. The Government did not contest the § 2255 label, and the case has proceeded as though Barajas filed a valid habeas petition. Because we have held that "a federal District Court is not bound by the label attached to the remedy pursued," *see Burns v. United States*, 321 F.2d 893, 896 (8th Cir. 1963), and because the parties do not argue to the contrary, we assume, as the Supreme Court did in *Chaidez*, "that nothing in this case turns on the difference between a *coram nobis* petition and a habeas petition," 568 U.S. at 345 n.1.

inform a client of collateral consequences like deportation could constitute ineffective assistance of counsel. In *Padilla*, however, the Supreme Court held that criminal defense attorneys have a duty to inform clients about the possible immigration consequences of pleading guilty in order to provide effective counsel under the Sixth Amendment. 559 U.S. at 374. Barajas relied on *Padilla* in his § 2255 petition. In 2012, citing *Padilla*, the district court granted Barajas's § 2255 petition and found that his counsel was ineffective for failing to inform him about the immigration consequences of pleading guilty. The Government timely appealed.

In 2013, while the appeal was pending, the Supreme Court decided *Chaidez*, which held that *Padilla* announced a "new rule" under the *Teague* standard and thus cannot be applied retroactively to cases on collateral review. *See* 568 U.S. at 348-49. In light of that decision, we reversed the district court's order and remanded for further consideration. On remand, the district court denied Barajas's § 2255 petition, finding that *Teague* bars the application of *Padilla*'s new rule in this case.[3] Barajas now appeals the district court's decision, arguing that *Teague*'s bar on retroactive application of new rules does not apply to collateral review of federal convictions, especially in the context of ineffective assistance of counsel claims.

---

[3]In addition to denying the petition because trial counsel's failure to inform did not violate the law at the time, the district court also found that Barajas's trial counsel did not affirmatively misrepresent the consequences of his guilty plea—a finding that Barajas attempts to challenge on appeal. However, the certificate of appealability issued by the district court does not encompass this issue. Therefore, we do not address whether counsel affirmatively misrepresented the consequences of the plea. *See Harris v. Bowersox*, 184 F.3d 744, 748 (8th Cir. 1999) ("[W]e limit our appellate review to the issues specified in the certificate of appealability.").

## II.

We review determinations of 28 U.S.C. § 2255 relief *de novo* and any underlying findings of fact for clear error. *Pierce v. United States*, 686 F.3d 529, 531 (8th Cir. 2012).

In *Teague*, the Supreme Court adopted a uniform rule to "clarify how the question of retroactivity should be resolved for cases on collateral review." 489 U.S. at 300. It held that "new rules" of criminal procedure "should not be applied retroactively to criminal cases on collateral review." *Id.* at 303-04. A case announces a new rule "when it breaks new ground[,] imposes a new obligation on the States or the Federal Government," or when "the result [is] not *dictated* by precedent." *Id.* at 301.[4] The *Teague* Court grounded its decision to bar retroactive application of new rules in systemic concerns about ensuring the finality of criminal convictions and respecting principles of comity and federalism. *Id.* at 308-10.

When the Supreme Court held in *Padilla* that "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel," 559 U.S. at 366, and thus that *Strickland v. Washington*'s standard of "reasonable professional assistance" applies to such advice, *id.* at 365-66, it did not address whether it was announcing a "new rule" for *Teague* purposes. Three years later, in *Chaidez*, the Court clarified that *Padilla* indeed announced a new rule. 568 U.S. at 354. The Court noted that, although it had applied *Strickland* "in diverse contexts without ever suggesting that doing so required a new rule," *id.* at 348, *Padilla* was not simply an application of *Strickland*, *id.* at 348-49. Indeed, "had *Padilla* merely made clear that a lawyer who neglects to inform a client about the risk of deportation is

---

[4]The Court identified two exceptions to this general bar: substantive rules related to the authority to proscribe specific conduct and watershed rules of criminal procedure. *See Teague*, 489 U.S. at 311. This case does not implicate either exception.

professionally incompetent," it would not have constituted a new rule. *Id.* Instead, "prior to asking *how* the *Strickland* test applied ('Did this attorney act unreasonably?'), *Padilla* asked *whether* the *Strickland* test applied ('Should we even evaluate if this attorney acted unreasonably?')." *Id.* at 349. The answer to "that preliminary question about *Strickland*'s ambit . . . required a new rule," which cannot be applied retroactively. *Id.*

Based on this conclusion, the *Chaidez* Court explained that "defendants whose convictions became final prior to *Padilla* . . . cannot benefit from its holding." *Id.* at 358. Although at first blush this statement would seem to resolve the present appeal, the scope of this general proposition is somewhat uncertain. In a footnote, *Chaidez* explicitly declined to address whether *Teague* applies when a petitioner challenges a federal conviction, especially when such a challenge is based on a claim of ineffective assistance of counsel. *Id.* at 358 n.16 (explaining that those arguments were not raised properly below). Barajas's appeal argues that *Teague* should not apply in such cases. He suggests that federal cases do not involve *Teague*'s interest in comity and that claims for ineffective assistance of counsel do not raise *Teague*'s concern about the finality of criminal judgments. We address the issues in turn.

A.

*Teague* involved collateral review of a state conviction under 28 U.S.C. § 2254. Although the Supreme Court has assumed that *Teague*'s bar on retroactivity applies to collateral review of federal convictions under § 2255, *see, e.g.*, *Welch v. United States*, 136 S. Ct. 1257, 1264 (2016), it has not decided the question. Nor has this court.[5] Every circuit to have addressed the question directly has concluded that

---

[5]We have considered the *Teague* doctrine when reviewing § 2255 petitions without addressing the question. *See Sun Bear v. United States*, 644 F.3d 700, 703-04 (8th Cir. 2011); *see also Abraham v. United States*, 699 F.3d 1050, 1052-53 (8th Cir. 2012).

*Teague* applies to both federal and state convictions.  *See, e.g.*, *United States v. Sanchez-Cervantes*, 282 F.3d 664, 667 (9th Cir. 2002) (explaining, consistent with the findings of the Second, Fourth, Seventh, and Tenth Circuits, that *Teague* applies to § 2255 cases).[6]  Today, we join those circuits.

Barajas contends that all courts to have considered the issue "misread the intent of the Supreme Court in *Teague*."  Though he acknowledges the importance of finality, Barajas argues that comity is a second, necessary "pillar" supporting *Teague*'s limit on retroactivity.  Indeed, *Teague* champions the importance of preventing "intrusive" incursions into state sovereignty and avoiding the "costs imposed upon the State[s] by retroactive application of new rules of constitutional law on habeas corpus."  *Id.* at 310.  On many occasions, the Supreme Court has reiterated the gravity of this interest.  *See, e.g.*, *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (explaining that *Teague* "was motivated by a respect for the States' strong interest in the finality of criminal convictions, and the recognition that a State should not be penalized for relying on the constitutional standards that prevailed at the time the original proceedings took place" (internal quotation marks omitted)).  Thus, Barajas contends that because his challenge to his federal conviction does not implicate comity or federalism, the *Teague* bar should not apply.

We reject this argument for three reasons.  First, while *Teague* emphasized the particularly egregious consequences of upsetting the finality of state convictions, the Supreme Court also, and independently, rooted the decision in the importance of finality more generally.  *See* 489 U.S. at 309.  The Court explained that "[a]pplication of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal

---

[6]That said, some courts have begun to express doubt.  *See Reina-Rodriguez v. United States*, 655 F.3d 1182, 1190 (9th Cir. 2011); *Duncan v. United States*, 552 F.3d 442, 444 n.2 (6th Cir. 2009).

justice system." *Id.* "Without finality, the criminal law is deprived of much of its deterrent effect." *Id.* These finality concerns are conceptually distinct from concerns about federalism and comity. Second, and relatedly, *Teague* explicitly "adopt[ed] Justice Harlan's approach to retroactivity for cases on collateral review." *Id.* at 292. Years before the *Teague* decision, Justice Harlan repeatedly urged the Court to recognize that "it is sounder, in adjudicating habeas petitions, generally to apply the law prevailing at the time the conviction became final than it is to seek to dispose of all these cases on the basis of intervening changes in constitutional interpretation." *See Mackey v. United States*, 401 U.S. 667, 689 (1971) (Harlan, J., concurring in the judgment); *see also Desist v. United States*, 394 U.S. 244, 262-63 (1969) (Harlan, J., dissenting). Notably, he raised these concerns in cases involving collateral review of federal convictions. Third, the Supreme Court has explained in a similar context that it sees "no basis for affording federal prisoners a preferred status when they seek postconviction relief" because "the Federal Government, no less than the States, has an interest in the finality of its criminal judgments." *United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting an argument that post-conviction rules promoting finality should receive less weight in the federal context simply because "considerations of comity" are not present).

Given the importance of protecting the finality of criminal convictions, we join our sister circuits and hold that the *Teague* limit on retroactivity applies to collateral review of both state and federal convictions.

B.

We next consider Barajas's argument that even if finality provides an independently sufficient basis for applying *Teague* to federal convictions, we need not apply *Teague* in the ineffective assistance context because "*Strickland* already protects finality interests" in such cases. Barajas points out that *Strickland* claims for ineffective assistance of counsel are unique because they "are almost always brought on collateral review, which means they almost always involve a final conviction and

thus implicate finality." Therefore, he suggests, *Strickland*'s high bar must serve as sufficient protection to the finality of convictions in the ineffective assistance context.

More precisely, *Strickland* functions as an exception to the general, finality-promoting rule that "claims not raised on direct appeal may not be raised on collateral review." *Massaro v. United States*, 538 U.S. 500, 504-05 (2003). Petitioners may, and in many cases must, wait to raise ineffective assistance claims for the first time on collateral review. *See id.* at 508-09. This rule reflects a willingness to upset finality by granting post-conviction relief but only if a petitioner can satisfy *Strickland*'s rigorous standard for proving ineffective assistance. *See* 466 U.S. 668, 687 (1984) (laying out the two-pronged test for proving ineffective assistance of counsel, which requires a showing of deficient performance and prejudice); *see also Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (emphasizing the "rigorous standard which *Strickland* erected for ineffective-assistance claims"). In other words, although successful *Strickland* claims actually undermine the finality of criminal convictions, we tolerate this narrow exception in part because *Strickland*'s rigorous standard sufficiently "reflects the profound importance of finality in criminal proceedings." *See Strickland*, 466 U.S. at 693. Thus, Barajas argues, because generally we rely only on *Strickland*'s rigorous standard to protect the finality of convictions against claims for ineffective assistance of counsel—and, in the federal context, finality of convictions is the only interest *Teague* serves—relying on *Teague* to achieve the same purpose would be unnecessary and inappropriate. We disagree.

Though both *Teague*'s bar and *Strickland*'s rigorous standard functionally protect the finality of convictions, it does not follow that *Strickland* renders *Teague* superfluous. This becomes clear when considering *Strickland* in context as a limited exception to the finality-promoting doctrine of procedural default. In this sense, the proper inquiry is not about the extent to which *Strickland* is able to protect finality but rather about the reason we allow *Strickland*'s qualified protection in the first place. The *Strickland* exception to procedural default derives from context-specific

rationales that do not justify creating a similar exception to *Teague*'s bar on the retroactive application of new rules of criminal procedure.

The doctrine of procedural default prevents criminal defendants from reviving forfeited claims without a showing of cause and prejudice in order to "conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro*, 538 U.S. at 504. It also promotes the timely resolution of constitutional issues. *See id.*; *see also Wainwright v. Sykes*, 433 U.S. 72, 89 (1977) (suggesting that the doctrine prevents "sandbagging" and encourages the earliest possible resolution of constitutional issues). In *Massaro v. United States*, however, the Supreme Court found that requiring a criminal defendant to bring ineffective assistance claims on direct appeal does not promote the objectives of the procedural-default doctrine. *See* 538 U.S. at 504. This is because, practically speaking, it is difficult to identify and evaluate counsel's relevant conduct on direct review, and it is often impossible to determine prejudice prior to a final judgment. *See id.* at 505-06. Thus, defendants are permitted to raise ineffective assistance claims for the first time on collateral review, leaving *Strickland*'s high threshold to guard finality in this context. *See* 466 U.S. at 693 (explaining that the standard for proving ineffective assistance of counsel reflects concerns about the finality of criminal convictions).

It would be inappropriate to extend the exception created for the procedural-default context to the *Teague* context because of the different purposes underlying the two doctrines. *Teague*'s bar on the retroactive application of new rules prevents convictions from being upended by every subsequent change in the law. *See* 489 U.S. at 304-09. Unlike in the procedural-default context, ineffective assistance claims are not uniquely situated when it comes to achieving this goal. In other words, there is a difference between (1) allowing an exception to the finality of a decision for criminal defendants to raise an attorney's deficient performance, the grounds for which were unknown or unreviewable on direct review, and (2) allowing an exception for criminal defendants to claim an attorney's performance was deficient

even though the attorney complied fully with the standards of performance in existence at the time. *Cf. Toledo v. United States*, 581 F.3d 678, 681 (8th Cir. 2009) ("We do not evaluate counsel's performance using the clarity of hindsight, but in light of the facts and circumstances at the time of trial." (internal quotation marks omitted)). *Teague* protects convictions that faithfully conform to existing constitutional law by fixing in time the procedural standards to which they are held. *See* 489 U.S. at 310. That objective provides no basis for treating ineffective assistance claims differently. *See In re Ifenatuora*, 528 F. App'x 333, 335 n.3 (4th Cir. 2013) (unpublished) (declining to create an ineffective assistance exception to *Teague* "given *Teague*'s emphasis on ensuring that retroactivity principles would not vary from rule to rule").

Finally, Barajas argues that applying the *Teague* bar in this case serves to "undermine *Massaro*'s collateral review regime" by encouraging defendants to bring their ineffective assistance claims on direct review. We do not share this concern. The Supreme Court explained in *Chaidez* that "virtually all" ineffective assistance claims can be raised on collateral review without implicating *Teague*. 568 U.S. at 348. Thus, even assuming that applying *Teague* here would have some marginal effect on incentives to bring ineffective assistance claims on direct review, that effect would not warrant disregarding *Teague* in this context.

We hold that *Teague*'s bar applies to federal petitioners raising ineffective assistance of counsel claims.

## III.

For the foregoing reasons, we affirm the denial of Barajas's § 2255 petition.

---