Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000509
13-FEB-2018
11:14 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

JORGE NAJERA, Petitioner-Appellant,
v.
STATE OF HAWAI'I, Respondent-Appellee.

NO. CAAP-14-0000509

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(S.P.P. NO. 12-1-0012(1) (CR. NO. 10-1-0026(1))

FEBRUARY 13, 2018

NAKAMURA, CHIEF JUDGE, AND FUJISE, J.,
WITH REIFURTH, J., DISSENTING

OPINION OF THE COURT BY NAKAMURA, CHIEF JUDGE

Petitioner-Appellant Jorge Najera (Najera) is a citizen
of Mexico. He was born in Mexico, but came to Hawai'i with his
uncle when he was ten years old. He married a United States
citizen in 1999 and became a permanent resident alien in 2001,
when he was twenty years old. Najera and his wife have four
children.

In 2010, Najera was charged with drug offenses,
including the main charge of attempted methamphetamine

trafficking in the first degree that carried significant mandatory imprisonment. Pursuant to a plea agreement, Najera pleaded no contest to drug charges that enabled him to avoid mandatory imprisonment, but still subjected him to automatic deportation. Najera was sentenced, served a one-year term of incarceration, and then was placed in deportation proceedings. Najera filed a petition to set aside his convictions (Petition) pursuant to Hawaiʻi Rules of Penal Procedure (HRPP) Rule 40 (2006). Najera asserted that he received ineffective assistance of counsel because his trial counsel did not advise him that his no contest pleas would subject him to automatic deportation and that had he received this advice, he would not have pleaded no contest. Najera also stated that he never told his counsel that he was not a citizen. The Circuit Court of the Fifth Circuit (Circuit Court)[1] ruled that Najera had failed to state a colorable claim for relief and denied his petition without a hearing.[2]

The question presented in this appeal is whether Najera's failure to inform his counsel that Najera was not a citizen absolved counsel of the obligation to advise Najera that his no contest pleas would subject him to automatic deportation. We conclude that the answer to this question is "no." We conclude that Najera's ineffective assistance of counsel claim raised a colorable claim for relief, and therefore, the Circuit Court erred in denying Najera's Petition without a hearing. We remand the case for a hearing to determine whether the representation provided by Najera's counsel was deficient and whether absent counsel's alleged deficient performance, there is

---

[1] The Honorable Rhonda I.L. Loo presided.

[2] Because the Circuit Court denied Najera's Petition without a hearing, we must assume the allegations in Najera's Petition are true. See Dan v. State. 76 Hawaiʻi 423, 427, 879 P.2d 528, 532 (1994). We therefore accept the allegations in Najera's Petition as true in analyzing whether Najera's Petition stated a colorable claim for relief.

a reasonable possibility that Najera would not have pleaded no contest.

BACKGROUND

I.

Najera was born in Mexico. He is not a United States citizen. In about 1991, when Najera was ten years old, he came with his uncle to Maui from Juarez, Mexico. When Najera was fourteen, he was abandoned by his uncle and was placed in foster care. He attended high school on Maui and married a United States citizen in 1999. In 2001, when Najera turned twenty, he became a permanent resident alien of the United States.

In January 2010, the State of Hawai'i (State) charged Najera by indictment with attempted first-degree methamphetamine trafficking (Count 1); prohibited acts related to drug paraphernalia (Count 2); and second-degree promoting a detrimental drug (Count 3). Najera's attempted first-degree methamphetamine trafficking charge carried a mandatory indeterminate twenty-year term of imprisonment, a mandatory minimum term of imprisonment of between two and eight years, and a fine of up to $2 million. See Hawaii Revised Statutes (HRS) § 712-1240.7(3) (Supp. 2009). The charges against Najera stemmed from evidence obtained pursuant to the execution of search warrants on Najera's home, truck, and person, and Najera's consent to search another vehicle. During these searches, the police recovered 19.46 grams of purported crystal methamphetamine, over 170 grams of purported marijuana vegetation, three marijuana plants, and an assortment of drug paraphernalia.

A Deputy Public Defender (DPD) was appointed to represent Najera. The State and Najera subsequently entered into a plea agreement, which called for: (1) Najera to plead no contest to an amended charge of first-degree promoting a dangerous drug instead of attempted first-degree methamphetamine trafficking, in Count 1; (2) Najera to plead no contest as

3

charged to Counts 2 and 3; (3) the State to recommend a sentence of ten years of probation; and (4) Najera to stipulate to one year of imprisonment as a condition of probation and not to move for sentencing under "Act 44"[3] or for a deferred acceptance of no-contest plea. By pleading no contest to first-degree promoting a dangerous drug instead of attempted first-degree methamphetamine trafficking, Najera would still be exposed to a maximum indeterminate twenty-year term of incarceration, but the Circuit Court would have the option of sentencing Najera to probation, rather than a mandatory indeterminate twenty-year term of incarceration, and there would be no mandatory minimum term of incarceration.

In May 2011, Najera pleaded no contest pursuant to the plea agreement. During the plea colloquy, the Circuit Court advised Najera: "And if you're not a citizen you're possibly looking at consequences of deportation, exclusion from admission to the United States, or denial naturalization [sic] under the laws of the United States. Do you understand?" Najera responded: "Yes, your Honor." The No Contest Plea form which Najera signed also stated:

> 10. I know that, if I am not a citizen of the United States, a conviction or a plea of guilty or no contest, whether acceptance of my plea is deferred or not, may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States.

The Circuit Court found that Najera's no contest pleas were validly entered, accepted his pleas, and found him guilty of the amended charge in Count 1 and guilty as charged in Counts 2 and 3. The Circuit Court required the preparation of a presentence investigation and report prior to sentencing.

The presentence report contained information indicating that Najera was not a citizen. The report identified Najera's

---

[3] Act 44 permitted the court to sentence certain defendants to probation to undergo drug treatment and to expunge their convictions upon the successful completion of drug treatment. See HRS 706-622.5 (Supp. 2009).

birthplace as "Mexico"; the space after "US Citizen:" was left blank on Najera's "Hawaii Criminal Justice Inquiry-Full Rap Sheet" contained in the report; and the "Family Background" section of the report noted that sometime prior to 2004, Najera was arrested and taken to Los Angeles "where he awaited deportation proceedings," but was released to the custody of the parents of his then girlfriend (who later became his wife). Najera did not move to withdraw his plea after the presentence report was prepared, and the case proceeded to sentencing.

The Circuit Court sentenced Najera on August 3, 2011. Consistent with the State's recommendation in the plea agreement, the Circuit Court sentenced Najera to ten years of probation, subject to the condition that he serve one-year in prison. Najera did not file a direct appeal from his judgment.

II.

After Najera completed serving his one-year term of incarceration, he was detained by immigration authorities and placed in deportation proceedings. On December 10, 2012, Najera filed his Petition pursuant to HRPP Rule 40 to set aside his convictions. In his Petition, Najera claimed that the DPD who represented him in his criminal case failed to provide him with effective assistance of counsel because counsel had failed to warn him of the direct immigration consequences of his no contest pleas. In particular, Najera claimed that his counsel did not advise him, and he did not know, that by entering his no contest pleas, "he would be subject to automatic deportation." Najera alleged that if he had been advised of the immigration consequences of his no contest pleas, he would not have pleaded no contest and "would have instead presented [his] defenses at trial."

Najera stated that he "never told [his trial counsel] that [he] was not a citizen," and he stated that the issue of his citizenship "was never brought up" during interviews with his counsel. Najera explained his failure to inform his counsel

5

about his noncitizen status by stating that "I presumed my status was fine because I was married and had 4 children." Najera's wife also submitted a declaration in which she stated that: "[M]y husband never told [trial counsel] that he was not a citizen, because we never thought that was an issue." In connection with his Petition, Najera submitted a declaration signed by his trial counsel. In his declaration, trial counsel stated: "At this time, I cannot recall what I advised [Najera] with respect to his change of plea."

While Najera's Petition was pending in the Circuit Court, Najera was deported to Mexico. The Circuit Court subsequently denied Najera's Petition without a hearing, and it issued its "Findings of Fact, Conclusions of Law, and Order Dismissing [Najera's Petition]" (Order Denying Petition) on January 2, 2014. The Circuit found that Najera had waived his claim of ineffective assistance of counsel by failing to previously raise it. Alternatively, considering Najera's ineffective assistance of counsel claim on the merits, the Circuit Court found that even assuming the facts alleged in Najera's Petition were true, Najera had failed to raise a colorable claim for post-conviction relief. Accordingly, the Circuit Court denied Najera's Petition without a hearing. This appeal followed.

DISCUSSION

I.

On appeal, Najera contends that the Circuit Court erred in denying his Rule 40 Petition without a hearing. We agree.

HRPP Rule 40(f) provides, in relevant part, that "[i]f a petition alleges facts that if proven would entitle the petitioner to relief, the court shall grant a hearing which may extend only to the issues raised in the petition or answer."

> As a general rule, a hearing should be held on a Rule 40 petition for post-conviction relief where the petition states a colorable claim. To establish a colorable claim, the allegations of the petition must show that if taken as true the facts alleged would change the [outcome of the

6

case], however, a petitioner's conclusions need not be regarded as true.

Dan v. State, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994) (quoting State v. Allen, 7 Haw. App. 89, 92, 744 P.2d 789, 792 (1987)).

A defendant raising a claim of ineffective assistance of counsel must demonstrate that in light of all the circumstances, counsel's performance was not objectively reasonable, that is, was not "'within the range of competence demanded of attorneys in criminal cases.'" Briones v. State, 74 Haw. 442, 462, 848 P.2d 966, 976 (1993) (citation omitted). To establish a claim of ineffective assistance of trial counsel, the defendant has the burden of satisfying a two-part test. The defendant must establish: (1) "'specific errors or omissions reflecting [defense] counsel's lack of skill, judgment or diligence'"; and (2) "that 'these errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense.'" Id. (citation, ellipsis points, and brackets omitted).

As explained below, especially in light of the reasoning of the United State Supreme Court in Padilla v. Kentucky, 559 U.S. 356 (2010), we conclude that Najera stated a colorable claim of ineffective assistance of trial counsel and was entitled to a hearing on that claim. We further conclude that Najera did not waive his claim of ineffective assistance of counsel by failing to previously raise it. We therefore vacate the Circuit Court's Order Denying Petition and remand the case for further proceedings.

II.

In Padilla, the defendant, Jose Padilla, was an alien who had been a lawful permanent resident of the United States for 40 years. Id. at 359. Padilla pleaded guilty to the transportation of a large amount of marijuana, a guilty plea which made his deportation virtually mandatory under United States immigration laws. Id. In his post-conviction proceeding,

7

Padilla alleged that his trial counsel not only failed to advise him of the deportation consequence of his plea, but told him he did not have to worry about his immigration status because he had been in the country so long.  Id.  Padilla also alleged that he would not have pleaded guilty, but would have insisted on going to trial, "if he had not received incorrect advice from his attorney."  Id.

The Supreme Court agreed with Padilla that "constitutionally competent counsel would have advised him that his conviction for drug distribution made him subject to automatic deportation."  Id. at 360.  Taking Padilla's allegations as true, the Court had "little difficultly" concluding that he had sufficiently alleged that his counsel was constitutionally deficient.  Id. at 374.  The Court remanded the case for a determination of whether Padilla had been prejudiced by counsel's deficient performance and was entitled to relief on his ineffective assistance of counsel claim.  Id. at 374-75.

In explaining its conclusion that constitutionally competent counsel would have advised Padilla that his drug distribution conviction made him subject to automatic deportation, the Court observed that "the landscape of federal immigration law has changed dramatically over the last 90 years."  Id. at 360.  While once the class of deportable offenses was narrow and judges had broad discretionary authority to prevent deportation, under current immigration law, deportation is "virtually inevitable for a vast number of noncitizens convicted of crimes."  Id.  The certainty of deportation for certain offenses has dramatically raised the stakes of a noncitizen's criminal conviction and the importance of accurate legal advice regarding the immigration consequences of their criminal cases.  Id. at 363-64.  Given the significant impact that deportation may have on the lives of noncitizens, the Court recognized that "deportation is an integral part -- indeed, sometimes the most important part -- of the penalty that may be imposed on

noncitizen defendants who plead guilty to specified crimes." Id. at 364.

The Court acknowledged that immigration law can be complex, and that where "the deportation consequences of a particular plea are unclear or uncertain[,]" "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." Id. at 369. However, the Supreme Court stated that in Padilla's case, the immigration consequences of Padilla's guilty plea were obvious because the immigration statute is "succinct, clear, and explicit," in providing that any alien who is convicted of any controlled substance offense, "except for the most trivial of marijuana possession offenses," is subject to deportation. Id. at 368. Thus, Padilla's counsel could easily have determined that Padilla's plea would make his deportation presumptively mandatory "simply from reading the text of the statute[.]" Id. The Court concluded that where, as in Padilla's case, the deportation consequence of Padilla's guilty plea was truly clear, Padilla's counsel had a clear duty to give Padilla "correct advice" about this consequence. Id. at 369.

With respect to advice on the immigration consequences of a plea, the Court refused to draw a distinction between affirmative misadvice and failure to advise in evaluating ineffective assistance of counsel claims. The Court reasoned that limiting ineffective assistance of counsel claims to affirmative misadvice would invite two absurd results:

> First, it would give counsel an incentive to remain silent on matters of great importance, even when answers are readily available. Silence under these circumstances would be fundamentally at odds with the critical obligation of counsel to advise the client of "the advantages and disadvantages of a plea agreement." When attorneys know that their clients face possible exile from this country and separation from their families, they should not be encouraged to say nothing at all. Second, it would deny a class of clients least able to represent themselves the most rudimentary advice on deportation even when it is readily available. It is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation and the failure to do so "clearly satisfies the

9

> first [deficient performance] prong of the <u>Strickland</u>
> [ineffective assistance] analysis."

<u>Id.</u> at 370-71 (citations and footnote omitted).

The Court stated that the severity of deportation underscores how critical it is for counsel to inform his or her noncitizen client of the risk of deportation during the plea bargaining process. <u>Id.</u> at 373-74. To satisfy its responsibility under the Constitution to ensure that criminal defendants, whether citizen or not, receive effective assistance of counsel, the Court held that "counsel must inform her client whether his plea carries the risk of deportation. Our longstanding Sixth Amendment precedents, the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families living lawfully in this country demand no less." <u>Id.</u> at 374.

## III.

Here, as in <u>Padilla</u>, the deportation consequence of Najera's guilty plea to first-degree promoting a dangerous drug was obvious under the immigration laws. The immigration statute is "succinct, clear, and explicit" in providing that any alien who is convicted of any controlled substance offense, "except for the most trivial of marijuana possession offenses," is subject to deportation. <u>Id.</u> at 368.[4] Thus, Najera's no contest plea to a controlled substance offense for first-degree promoting a dangerous drug that was a class A felony made it virtually certain that he would be deported. Under <u>Padilla</u>, Najera's counsel had a clear duty to give him correct advice about the deportation consequence of his plea.

---

[4] The relevant immigration provision, 8 U.S.C. § 1227(a)(2)(B)(i), provides in pertinent part:

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State . . . relating to a controlled substance . . . . , other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

10

In this case, however, Najera states that he never told his counsel that he was not a citizen. Thus, the question presented by this appeal is whether Najera's failure to inform counsel that Najera was not a citizen absolved counsel of the obligation to advise Najera that his no contest pleas would subject him to automatic deportation. In other words, should the burden be on a noncitizen criminal defendant to tell counsel about his or her immigration status, or should the burden of asking the client about his or her citizenship status rest with defense counsel. We conclude that defense counsel who lacks information about a defendant's citizenship status has the burden of asking the defendant whether he or she is a citizen.

As the Supreme Court recognized in Padilla, "[i]t is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation," which "is an integral part -- indeed, sometimes the most important part -- of the penalty that may be imposed on noncitizen defendants." Id. at 364, 371. In order to effectively represent a criminal defendant, counsel must at least gather enough information to provide advice pertinent to the defendant's situation.

Defendants who lack knowledge that their immigration status is relevant to their criminal case would have no particular reason to provide such information to counsel, unless asked. Placing the burden on noncitizen defendants to inform counsel presupposes that such defendants understand that their immigration status is relevant to the criminal proceedings. But, it is not clear why a criminal defendant, who is untrained in the law and is relying on defense counsel for appropriate legal advice, would have such an understanding. Placing the burden on noncitizen defendants to apprehend the significance of their immigration status and inform defense counsel of their noncitizen status would mean that only defendants who were aware, independent of defense counsel, that their criminal convictions could affect their immigration status would be assured of

receiving the type of correct deportation advice required by Padilla. As between defense counsel and a noncitizen defendant, we believe defense counsel is in a better position to understand that a criminal conviction may have serious deportation consequences. See ABA Standards for Criminal Justice 4-5.5(a) (4th ed. 2015) ("Defense counsel should determine a client's citizenship and immigration status[.]").

We therefore side with courts that have imposed the burden on defense counsel who lacks knowledge of the citizenship status of a client to ask. See Commonwealth v. Clarke, 949 N.E.2d 892, 905 (Mass. 2011), abrogated on other grounds by Chaidez v. United States, 568 U.S. 342 (2013); People v. Picca, 947 N.Y.S.2d 120, 126, (N.Y. App. Div. 2012); People v. Chacko, 952 N.Y.S.2d 160, 161-62 (N.Y. App. Div. 2012).[5/] This burden is not a difficult one to overcome and can, for example, be satisfied by simply including on an intake questionnaire, the question: "Are you a United States citizen?"[6/] If the client informs or even misinforms defense counsel that he or she is a citizen, then defense counsel would be absolved of the responsibility of providing advice to the client regarding the deportation consequences of the client's guilty or no contest plea.

## IV.

In this case, Najera's Petition alleged that the issue of his citizenship was never brought up during interviews with his trial counsel and that Najera did not tell his trial counsel

---

[5/] We note that there are courts who have reached or indicated a different conclusion. See Carillo v. State, 982 N.E.2d 468, 473-75 (Ind. 2013); Hernandez v. State, No. 107,069, 2013 WL 2395302, at *3 (Kan. App. May 24, 2013). However, for the reasons previously discussed, we believe our analysis is correct.

[6/] See Andres Benach et. al., How Much to Advise: What are the Requirements of Padilla v. Kentucky, ABA Section of Litigation Chicago Section Annual Conference April 24-26, 2013, 5 (2013), https://www.americanbar.org/content/dam/aba/administrative/litigation/materials/sac2013/sac_ 2013/18_ world_after_padilla_v_kentucky.authcheckdam.pdf (recommending that "[i]n each case counsel must determine the immigration status and criminal history of the defendant. This can be done using a questionnaire[.]").

that he was not a citizen.  The Petition further alleged that (1) trial counsel did not advise Najera, and Najera did not know, that his no contest plea to first-degree promoting a dangerous drug would subject him to automatic deportation; and (2) if he had been advised of the deportation consequence of his plea, he would not have pleaded no contest and would have insisted on going to trial.  We conclude that Najera's Petition stated a colorable claim of ineffective assistance of trial counsel and that he therefore was entitled to a hearing on this claim.[1]

At a hearing on Najera's Petition, it will be up to the Circuit Court, as the trier of fact, to determine the credibility of Najera's allegations, which have been taken as true in deciding whether Najera was entitled to a hearing.  For example, the Circuit Court will have to determine: (1) whether trial counsel, in fact, failed to inquire about Najera's citizenship status and lacked knowledge that Najera was not a citizen; and (2) what advice, if any, trial counsel gave Najera about the deportation consequences of his no contest plea.

In this regard, we note that trial counsel's declaration does not state that he failed to inquire about Najera's citizenship status, that he lacked knowledge that Najera was not a citizen, or that he failed to advise Najera about the deportation consequences of Najera's plea.  Trial counsel's declaration simply states that "[a]t this time, I cannot recall what I advised [Najera] with respect to his change of plea."  We also note that Najera's presentence report, which we presume trial counsel reviewed before Najera's sentencing, clearly

_____

[1] The United States Supreme Court's decision in Padilla established a new rule, and Padilla does not apply retroactively to convictions that had become final before Padilla was decided.  Chaidez v. United States, 568 U.S. 342 (2012).  The State did not argue that any new rule established in this case should not be applied to Najera because his convictions were already final, and we apply our analysis in this case to Najera.  See Schiro v. Farley, 510 U.S. 222, 228-29 (1994) (concluding that a state can waive a claim based on Teague v. Lane, 489 U.S. 288 (1989), by failing to raise a Teague argument).  Neither party addressed whether a decision in Najera's favor would establish a new rule, and we do not decide whether our decision establishes a new rule or the extent to which it should be applied retroactively to other cases.

indicates that Najera was not a citizen. At a hearing on Najera's Petition, trial counsel can be called to testify to obtain a more complete picture of the circumstances surrounding his representation of Najera and whether his memory can be refreshed through various means.

The Circuit Court will also have to determine the credibility of Najera's allegation that if he had been advised of the deportation consequences of his plea, he would not have pleaded no contest and would have insisted on going to trial. In this regard, we note that the evidence against Najera appeared to be strong and Najera's plea agreement contained terms that were very beneficial to him. By pleading no contest to the amended charge of first-degree promoting a dangerous drug pursuant to his plea agreement, Najera avoided the mandatory twenty-year indeterminate term of imprisonment required for a conviction for attempted first-degree methamphetamine trafficking. He also avoided a mandatory minium term of imprisonment of between two and eight years. Instead, the plea agreement and his no contest plea made it possible for him to receive a sentence of ten years of probation with one year of imprisonment. To satisfy his burden of showing ineffective assistance of counsel, Najera will be required to show that there is a reasonable possibility that he would not have pleaded no contest and would have gone to trial if counsel had correctly advised him of the deportation consequences of his plea. See State v. Richie, 88 Hawai'i 19, 39, 960 P.2d 1227, 1247 (1998); Hill v. Lockhart, 474 U.S. 52, 59 (1985).

V.

In concluding that Najera had failed to state a colorable claim for relief, the Circuit Court relied upon the immigration advisement it provided to Najera during the change of plea colloquy and the similar advisement contained in Najera's no contest plea form. These advisements informed Najera that if he was not a citizen, then his no contest plea and conviction may have the consequence of deportation, exclusion from admission

14

into the United States and denial of naturalization.  However, Padilla provides that if it is clear under the immigration laws that the defendant's plea will result in automatic deportation, defense counsel has a duty to give the defendant "correct advice" about the deportation consequences, and Padilla's counsel was "constitutionally deficient" for failing to advise Padilla that his plea would subject him to automatic deportation.  Padilla, 559 U.S. at 368-69, 374.

Where it is clear that a plea will result in deportation, the advice that a plea may result in deportation is not correct advice and is insufficient to demonstrate constitutionally competent representation.  See United States v. Rodriguez-Vega, 797 F.3d 781, 785-88 (9th Cir. 2015) (holding that where the deportation consequence of a guilty plea is virtually certain, advice to the defendant that her guilty plea potentially subjects her to deportation constitutes ineffective assistance); United States v. Swaby, 855 F.3d 233, 240 (4th Cir. 2017); People v. Abdallah, 61 N.Y.S.3d 618, 620-21 (N.Y. App. Div. 2017).  The court's obligation to provide advice to a defendant to assure a knowing and voluntary plea is not commensurate with defense counsel's obligation to provide effective representation.  See State v. Paredez, 101 P.3d 799 (N.M. 2004) (holding that trial court's compliance with immigration admonition required by rule to ensure valid guilty pleas did not relieve counsel of his obligation to advise the defendant that defendant's plea would result in almost certain deportation); Rodriguez-Vega, 797 F.3d at 787; Swaby, 855 F.3d at 237-38, 240.  Indeed, Najera does not fault the Circuit Court or challenge the adequacy of the Circuit Court's plea colloquy.[8]

---

[8] At the time the Circuit Court conducted its plea colloquy with Najera, HRS § 802E-2 (1993) provided that prior to accepting a guilty or no contest plea to any offense punishable as a crime, the court shall advise the defendant that:

> If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from
>
> (continued...)

15

However, defense counsel is in a much better position than the court to ascertain the particular circumstances of his or her client and determine the deportation consequences of a plea. Paredez, 101 P.3d at 803. Accepting, as we must, the factual allegations of Najera's Petition as being true, we conclude that the Circuit Court erred in relying on the advisements to Najera that his no contest plea may have deportation consequences in ruling that Najera failed to state a colorable claim for relief on his claim of ineffective assistance of counsel.

VI.

The Circuit Court also ruled that Najera had waived the right to raise his claim of ineffective assistance of counsel by failing to previously raise it. We conclude that the Circuit Court erred in relying on waiver in denying Najera's Petition without a hearing.

HRPP Rule 40(a)(3) provides:

> INAPPLICABILITY. Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived. Except for a claim of illegal sentence, _an issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted_, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue. There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

(Emphasis added.)

"Where [an HRPP Rule 40] petitioner has been represented by the same counsel both at trial and on direct

_____

9/ (...continued)
admission to the United States, or denial of naturalization pursuant to the laws of the United States.

The Circuit Court's advisement was not a verbatim recitation of HRS § 802E-2, but Najera does not challenge the Circuit Court's compliance with HRS § 802E-2. During its colloquy, the Circuit Court did not specifically ask Najera whether he was a United States citizen, presumably because of HRS § 802E-1 (1993), which provides that: "It is further the intent of the legislature that at the time of the plea no defendant shall be required to disclose the defendant's legal status in the court."

appeal, no waiver of the issue of trial counsel's performance occurs because no realistic opportunity existed to raise the issue on direct appeal." Briones, 74 Haw. at 459, 848 P.2d at 975. In addition, no waiver of a claim of ineffective assistance of trial counsel occurs where through no apparent fault on petitioner's part, trial counsel fails to perfect a direct appeal. Matsuo v. State, 70 Haw. 573, 577-78, 778 P.2d 332, 334-35 (1989).

Here, the record indicates that Najera was represented by the same counsel during the trial proceedings and at least through the time period in which to file a timely direct appeal. The allegations in Najera's Petition indicate that he did not become aware of the deportation consequences of his plea, and his trial counsel's alleged deficient performance, until he was detained by immigration authorities upon completing his one-year term of incarceration. Najera's Petition was filed several months after he was detained by immigration authorities and placed in deportation proceedings, and the instant Petition is his first petition under HRPP Rule 40. Under these circumstances, we conclude that Najera did not have a realistic opportunity to raise his ineffective assistance of counsel claim prior to filing the instant Petition. The Circuit Court erred in ruling that Najera had waived the issue of the ineffective assistance of his trial counsel.

CONCLUSION

Based on the foregoing, we vacate the Order Denying Petition, and we remand the case for further proceedings consistent with this Opinion.

On the briefs:

Gerald Johnson
for Petitioner-Appellant

Richard K. Minatoya
Deputy Prosecuting Attorney
County of Maui
for Respondent-Appellee

17