# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1203

_____

Tyrone White

*Petitioner - Appellant*

v.

Lynn Dingle

*Respondent - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 14, 2014
Filed: July 2, 2014

_____

Before WOLLMAN, MELLOY, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Tyrone James White was convicted in Minnesota state court of first-degree felony murder and attempted first-degree premeditated murder. The district court[1]

_____

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

denied his § 2254 petition. He appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

After a jury trial, White was convicted of first-degree felony murder and attempted first-degree murder in violation of Minn. Stats. §§ 609.17, 609.185(a)(1), and 609.185(a)(3). The Minnesota Supreme Court affirmed. *State v. White*, 684 N.W.2d 500 (Minn. 2004).

White petitioned for post-conviction relief in state court. The trial court summarily denied the petition. The Minnesota Supreme Court affirmed. *White v. State*, 711 N.W.2d 106 (Minn. 2006).

White petitioned for post-conviction relief in federal court under 28 U.S.C. § 2254. The district court dismissed for failure to exhaust claims. This court affirmed. *White v. Dingle*, 267 Fed. Appx. 489 (8th Cir. 2008). White moved to amend his petition. The district court denied amendment. He appealed. This court remanded, authorizing amendment. *White v. Dingle*, 616 F.3d 844 (8th Cir. 2010).

On remand, the district court denied relief. It granted a certificate of appealability (COA) on the ineffective-assistance-of-counsel claim alleging a juror conflict. White moved to expand the COA. This court denied the motion. He appeals pursuant to the COA, renewing his request for expansion.

## II.

Reviewing the denial of a § 2254 petition, this court reviews factual findings for clear error and legal conclusions de novo. *Evans v. Luebbers*, 371 F.3d 438, 441 (8th Cir. 2004).

A federal court "shall not" grant habeas relief unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

**28 U.S.C. § 2254(d)**.

"To state a claim for ineffective assistance of counsel, a habeas petitioner must demonstrate that (1) 'counsel's representation fell below an objective standard of reasonableness;' and (2) 'the deficient performance prejudiced the defense.'" ***Miller v. Dormire***, 310 F.3d 600, 602 (8th Cir. 2002), *quoting* ***Strickland v. Washington***, 466 U.S. 668, 687-88 (1984). The first prong requires a showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." ***Strickland***, 466 U.S. at 687. The second prong requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Id.*** at 694.

## III.

White claims that his counsel was ineffective by failing to discover that the jury foreperson, Martha Dixon, worked at the same casino as the victim's roommate, Theresa Hindsley. He contends that the Minnesota Supreme Court erred in reviewing this claim. The Minnesota Supreme Court said:

-3-

White asserts that the victim's roommate was a blackjack dealer at a casino where the foreperson was employed as a supervisor. White bases this claim on a statement allegedly made by the victim's roommate to an investigator with the Duluth Police Department, in which the victim's roommate said she was at work at the casino at the time of the shooting. We can find no statement or report mentioning such a statement in the district court record, and White did not attach any such statement or report to his petition. If the victim's roommate was in fact employed at the casino and the foreperson knew her, it is possible that the foreperson had previous knowledge about the case that prevented her from being impartial. Nevertheless, because White failed to provide evidence to support his claim that the foreperson was unable to be impartial, we cannot conclude that White's trial counsel was ineffective for failing to request a *Schwartz*[2] hearing.

***White***, 711 N.W.2d at 112.

In fact, a police report from the day after the murder states "HINDSLEY said that she works at the Fond-Du-Luh Casino." As the Magistrate Judge mentioned in the Report and Recommendation (R&R):

A police report dated April 25, 2001 completed by Duluth Police Officer Joel Don Olejnicak ("Officer Olejnicak") was contained in the state's first set of pretrial disclosures. (Coates Aff. at Ex. C at 2); (Disclosures CD, vol. 2 at 63–68, vol. 10 at 209–11). On the third page of the police report, Officer Olejnicak wrote:

I also spoke with THERESA LYNN HINDSLEY, DOB/03–1–80. HINDSLEY said she is a roommate of CARLSON and had been living there for approximately two weeks. HINDSLEY said that she works at the Fond–Du–Luth Casino and had left for work at

---

[2]*See **Schwartz v. Minneapolis Suburban Bus Co.**, 104 N.W.2d 301, 303 (Minn. 1960) (allowing for examination of jurors on the record, when juror impartiality is disputed).

> approximately 1530 hours and had not been at the residence since then. HINDSLEY said when she left the residence, CARLSON was the only person there.
>
> (*Id*.); (White Decl. Ex. A) [Doc. No. 77 at 3]. At trial, Mr. Whitlock and Mr. DeSanto apparently referred to this report in examining Officer Olejnicak. (Admin. R. at 1898, 1916). The report, however, was not identified in a trial exhibit list and the Court is unsure as to whether the report was marked for identification at trial.
>
> . . . .
>
> Notwithstanding the Minnesota Supreme Court's assertion to the contrary, the record does in fact contain documents, independent of White's post-conviction private investigator's letter, that connect Dixon and Hindsley. *White II*, 711 N.W. 2d at 112. Thus, the Minnesota Supreme Court may not have considered all facts relevant to White's claim.

**White v. Dingle**, No. 06-CV-1343, 2012 WL 6853473, at *21 (D. Minn. Aug. 7, 2012) (Magistrate R&R), *adopted by* No. 06-CV-1343, 2013 WL 146512 (Jan. 14, 2013).

## A.

The district court issued a COA under the language of § 2254(d)(1):

> Was it contrary to, or an unreasonable application of, clearly established law as determined by the Supreme Court of the United States for the Minnesota Supreme Court to reject petitioner's claim that his trial counsel was ineffective for failing to investigate the possible bias of juror Martha Dixon?

*White*, 2013 WL 146512, at \*1. Under § 2254(d)(1), a state court decision is "contrary to" clearly established federal law when the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law;" or (2) "decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." ***Williams v. Taylor***, 529 U.S. 362, 405, 413 (2000). A decision is an "unreasonable application" of clearly established federal law when the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

The R&R—adopted by the district court—said:

> Based on the facts available to him, Mr. Whitlock should have further investigated Dixon's background on *voir dire*. Specifically, he should have discovered the link between Dixon and Hindsley and requested a *Schwartz* hearing to investigate whether Dixon was truthful when she stated she did not know anyone on the witness list. Nevertheless, his failure does not rise to the level of ineffective assistance of counsel. To expect trial counsel to conduct an investigation as to the impartiality of every juror, even those who repeatedly and unequivocally state their impartiality on *voir dire* misconstrues *Strickland*. Moreover, Hindsley did not testify, nor were she and Dixon familially related. Stated another way, the connection between Dixon and Hindsley was more tenuous than the relationship between the *Williams* juror and her ex-husband. Though Mr. Whitlock's representation can be criticized in hindsight, his failure to request a *Schwartz* hearing or further investigate the connection between Dixon and Hindsley did not render him ineffective under *Strickland*.
>
> The Court finds that the first prong of *Strickland* was not met.

**Magistrate R&R**, 2012 WL 6853473, at \*23.

-6-

In *Williams v. Taylor*, the defendant discovered after trial that the jury foreperson failed to disclose that she was the ex-wife of the prosecution's lead-off witness (a deputy sheriff). **Williams**, 529 U.S. at 441-43. The Court said, "We should be surprised, to say the least, if a district court familiar with the standards of trial practice were to hold that in all cases diligent counsel must check public records containing personal information pertaining to each and every juror. Because of [the foreperson's] silence, there was no basis for an investigation into [her] marriage history." *Id.* at 443.

White argues *Williams* is distinguishable because additional investigation was unnecessary to discover Dixon's and Hindsley's connection. White asserts: "Here, the evidence of the relationship between Hindsley and Dixon was apparent from the records available to trial counsel." The question here, he maintains, is: Whether, in light of the information *available to trial counsel*, counsel should have further investigated the connection between Dixon and Hindsley.

As the district court acknowledged, White's counsel should have investigated Dixon's and Hindsley's *potential* connection. **Magistrate R&R**, 2012 WL 6853473, at *23. However, this omission did not render counsel ineffective under *Strickland*. During a lengthy voir dire examination, Dixon stated that she did not know any of the parties or witnesses. (Hindsley was listed as a witness, but did not testify.) Dixon also repeatedly said she could be fair and impartial. At trial, only one statement in one document suggested that Dixon and Hindsley worked at the same casino. There was no evidence that they knew each other. (In response to a voir dire question about the employees she supervised, Dixon said "everybody's been there in that department for a number of years, so we're kind of all real close, you know, know each other pretty well and each other's habits and stuff.") Since trial, White still presents no evidence that Dixon and Hindsley knew each other. He fails to show that counsel's performance "fell below an objective standard of reasonableness." **Strickland**, 466 U.S. at 688.

White also fails to show prejudice. *Id.* at 694 (prejudice requires showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). White asserts that he was "prejudiced by counsel's errors" because there "is a strong possibility that the jury foreperson was biased because of her relationship to the surviving victim's roommate." As the district court found, there is no direct evidence of bias. His speculation of prejudice is without evidentiary support.

B.

White asks this court to expand the COA, arguing that the Minnesota Supreme Court's ruling on juror partiality is reviewable under 28 U.S.C. § 2254(d)(2).

The R&R analyzed White's claim of juror partiality under both § 2254(d)(1) and § 2254(d)(2). **Magistrate R&R**, 2012 WL 6853473, at *22 ("Because White asserts that the Minnesota Supreme Court made factual errors, this claim within Ground Five is evaluated under both 28 U.S.C. § 2254(d)(2) and § 2254(d)(1)."). The R&R recommended, "White should receive a COA on claim two of Ground Five because this ineffective assistance of counsel claim based on juror bias may be debatable among reasonable jurists." *Id.* at *25. The district court adopted the R&R, but granted the COA only under § 2254(d)(1).

This court expands the COA to include review under § 2254(d)(2). *See Armstrong v. Hobbs*, 698 F.3d 1063, 1068 (8th Cir. 2012) (A panel may "exercise its discretion to consider *sua sponte* issues beyond those specified in a certificate of appealability, whether the certificate was issued by a district court or by an administrative panel of this court.").

-8-

C.

"[A]n unreasonable determination of the facts in light of the evidence presented in state court proceedings" occurs "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." ***Whitehead v. Dormire***, 340 F.3d 532, 536 (8th Cir. 2003), *citing* **28 U.S.C. § 2254(d)(2); 28 U.S.C. § 2254(e)(1)**. A petitioner must also "demonstrat[e] that the state court's determination of facts was unreasonable." ***Id.*** at 539, *citing* **28 U.S.C. 2254(d)(2)**.

White maintains that the Minnesota Supreme Court unreasonably found no evidence of a connection between Dixon and Hindsley. The R&R said:

> When Dixon testified that she worked at the Fond-Du-Luth Casino on *voir dire*, the connection between she and Hindsley could have been discovered. Contrary to the Minnesota Supreme Court's assertion that the trial record did not contain a "statement or report" substantiating the connection between Dixon and Hindsley, the relevant pretrial disclosures, witness lists, *voir dire* testimony, and trial testimony referencing Hindsley, have been part of the record since trial.
>
> . . . .
>
> While the Minnesota Supreme Court may not have adequately considered all relevant portions of the trial record, White failed to show by clear and convincing evidence that the state court's factual findings on the connection between Hindsley and Dixon "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). The Minnesota Supreme Court specifically examined Dixon's *voir dire* testimony and emphasized Dixon's repeated assertions that she did not know anyone on the witness list. *White II*, 711 N.W.2d at 112. It also noted that Hindsley's name was on the December 27, 2002 version of the witness list. *Id.* Additionally, the state court referenced Hindsley's statement to "an investigator with the Duluth Police Department" that she was at work at the Fond-du-Luth

-9-

Casino at the time of the murder. *Id.* White has not shown that the state court's finding that "no report or statement relevant to this claim" was unreasonable given neither Officer Olejnicak's report nor the private investigator's letter demonstrates that Dixon and Hindsley actually worked together directly or were acquainted in any way. 28 U.S.C. § 2254(d)(2) or § 2254(e)(1). At best, these documents make White's claims of juror bias plausible.

**Magistrate R&R**, 2012 WL 6853473, at *19, 22.

This court agrees. The Minnesota Supreme Court erroneously found no support in the trial record for White's assertion that Hindsley "was a blackjack dealer at a casino where [Dixon] was employed as a supervisor." **White**, 711 N.W.2d at 112. However, this error was not an unreasonable determination of facts in light of the evidence presented. The court said:

> If the victim's roommate was in fact employed at the casino *and* the foreperson knew her, it is possible that the foreperson had previous knowledge about the case that prevented her from being impartial. Nevertheless, because White failed to provide evidence to support his claim that the foreperson was unable to be impartial, we cannot conclude that White's trial counsel was ineffective for failing to request a *Schwartz* hearing.

*Id.* (emphasis added). The factual conclusion underlying the Minnesota Supreme Court's legal determination is that "White failed to provide evidence to support his claim that the foreperson was unable to impartial." This determination is not unreasonable. The trial record contained no evidence that Dixon and Hindsley knew each other, that Dixon had prior knowledge of the case, or that Dixon could not be impartial. *See **Edwards v. Roper**, 688 F.3d 449, 457 (8th Cir. 2012) (a petitioner "is not entitled to relief based on the state court's failure to consider evidence that was not before it").

-10-

IV.

White requests an evidentiary hearing to resolve factual issues. He asserts a hearing is necessary because "the record is not complete as to the connection between Ms. Dixon and Ms. Hindsley."

Under 28 U.S.C. § 2254(e)(2), the court shall not hold an evidentiary hearing, unless the applicant shows that:

(A) the claim relies on–

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

**28 U.S.C. § 2254(e)(2)**. This court reviews the denial of an evidentiary hearing for abuse of discretion. *Cox v. Burger*, 398 F.3d 1025, 1029 (8th Cir. 2005).

White's claim does not meet either of § 2254(e)(2)'s narrow requirements. *See Taylor v. Roper*, 561 F.3d 859, 864 (8th Cir. 2009). There are no disputed facts about the information available to White's counsel at the time of trial. The request for an evidentiary hearing is denied. *See id.*

-11-

\* \* \* \* \* \* \*

The judgment is affirmed.

_____