# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3652

_____

Dilang Dat

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: January 16, 2019
Filed: April 11, 2019

_____

Before BENTON, MELLOY, and KELLY, Circuit Judges.

_____

BENTON, Circuit Judge.

Dilang Nhial Dat pled guilty to robbery in violation of 18 U.S.C. §§ 1951 and 2. He moved to vacate his conviction under 28 U.S.C. § 2255, claiming his counsel was ineffective by misadvising him about the immigration consequences of his guilty plea. The district court denied the motion without an evidentiary hearing. Dat

appeals. Having jurisdiction under 28 U.S.C. §§ 1291 and 2253, this court reverses and remands.

## I.

Dat, a South Sudanese citizen, was born in 1993 at a refugee camp in Kenya after his parents fled Sudan. Admitted to the United States around 1994, he became a lawful permanent resident. For most of his life, he lived in Omaha, Nebraska with his parents and five younger siblings. His father is wheelchair-bound, and his mother, the family's sole provider, works in a factory.

In 2014, Dat was indicted on two counts of Hobbs Act robbery, under 18 U.S.C. §§ 1951 and 2, and one count of brandishing a firearm during a robbery, under 18 U.S.C. §§ 924(c) and 2. He pled guilty to one robbery count. The other charges were dismissed. The district court sentenced him to 78 months' imprisonment.

In an affidavit, Dat asserts: Before pleading guilty, he asked his counsel about the possibility of deportation. His counsel spoke to an immigration specialist, then advised he would not be deported because he was a long-tenured lawful permanent resident, not an "illegal immigrant." After rejecting two plea agreements with strong deportation language, he accepted a plea acknowledging "there are or may be collateral consequences to any conviction to include but not limited to immigration." His acceptance was based on counsel's assurance his immigration status would be unaffected. He learned, after his conviction, this immigration advice was incorrect, when his mother's attempt to renew his green card was denied.

Dat moved to vacate his conviction under § 2255, claiming his counsel misadvised him about the immigration consequences of pleading guilty. The district court denied his motion without an evidentiary hearing. In a brief order, the court found he was advised of the immigration consequences by his plea agreement,

Petition to Enter a Plea of Guilty, and colloquy with the court at his change-of-plea hearing. Dat appeals, arguing the district court erred in denying his motion and abused its discretion by not holding a hearing.

## II.

This court reviews § 2255-ineffective-assistance claims de novo, and the underlying factual findings for clear error. *Hyles v. United States*, 754 F.3d 530, 534 (8th Cir. 2014). "A district court's denial of an evidentiary hearing on a § 2255 motion may be reversed only for an abuse of discretion." *Id.* To establish ineffective assistance during plea negotiations, "a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' and that he was prejudiced as a result." *Jae Lee v. United States*, 137 S. Ct. 1958, 1964 (2017), *quoting* *Strickland v. Washington*, 466 U.S. 668, 688 (1984). A § 2255 petitioner is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the [petitioner] is entitled to no relief." **28 U.S.C. § 2255(b)**. "A petitioner's allegations must be accepted as true and a hearing should be held unless they are contradicted by the record, inherently incredible, merely conclusions, or would not entitle the petitioner to relief." *Garcia v. United States*, 679 F.3d 1013, 1014 (8th Cir. 2012).

## A.

Establishing *Strickland* deficiency requires showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *White v. Dingle*, 757 F.3d 750, 752–53 (8th Cir. 2014), *quoting* *Strickland*, 466 U.S. at 687. To provide constitutionally effective assistance, "criminal defense attorneys have a duty to inform clients about the possible immigration consequences of pleading guilty." *Barajas v. United States*, 877 F.3d 378, 380 (8th Cir. 2017), *citing* *Padilla v. United States*, 559 U.S. 356, 374 (2010).

[W]hen the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear." *Padilla*, 559 U.S. at 369.

Dat asserts his counsel assured him he would not be deported. This would be deficient representation because his conviction subjects him to mandatory removal. Hobbs Act robbery (with a 78-month term of imprisonment) is clearly an aggravated felony. *See* **8 U.S.C. § 1101 (43)(F)** ("aggravated felony" means a crime of violence under 18 U.S.C. § 16 with a term of imprisonment of at least one year, which includes "an offense that has an element the use, attempted use, or threatened use of physical force against the person or property of another"); *Diaz v. United States*, 863 F.3d 781, 783 (8th Cir. 2017) (holding Hobbs Act robbery is a crime of violence under analogous statute), *citing United States v. House*, 825 F.3d 381, 387 (8th Cir. 2016); *United States v. Farmer*, 73 F.3d 836, 842 (8th Cir. 1996) (concluding Hobbs Act robbery "has as an element the use, attempted use, or threatened use of physical force against the person of another"). The Immigration and Nationality Act is "succinct, clear, and explicit" about the removal consequence for aggravated felonies. *Padilla*, 559 U.S. at 368. *See* **8 U.S.C. § 1227(a)(2)(A)(iii)** ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); **8 U.S.C. § 1229b(a)(3)** (an alien "convicted of any aggravated felony" is not eligible for cancellation of removal); *Chaidez v. United States*, 568 U.S. 342, 345 (2013) (aggravated felony conviction subjects a lawful permanent resident to "mandatory removal").

Because the deportation consequence is clear, "the duty to give correct advice is equally clear." *Padilla*, 559 U.S. at 369. Taking Dat's assertions as true, his counsel provided "false assurance that his conviction would not result in his removal from this country." *Id.* at 368. Nothing in the record contradicts his factual assertions about this advice. Like in *Padilla*, "[t]his is not a hard case in which to find deficiency: The consequences of [Dat's] plea could easily be determined from

reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect." *Id.* at 368–69.

B.

Prejudice is a closer question. Dat asserts he would have rejected the plea and insisted on trial but for his counsel's misadvice. If true, this shows prejudice. *See Jae Lee*, 137 S. Ct. at 1965 ("[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"), *quoting **Hill v. Lockhart***, 474 U.S. 52, 59 (1985). But, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* at 1967. Though the record lacks evidence such as an affidavit from plea counsel or the allegedly rejected plea agreements, sufficient contemporaneous evidence substantiates his claims.

Dat's background supports his assertion that he was focused on remaining in the country, which the Government does not contest. *Cf. **Doe v. United States***, 915 F.3d 905, 912 (2d Cir. 2019) ("[Defendant's] history in the United States, his family circumstances, and his gainful employment all signal [his] strong connection to, and desire to remain in, the United States."), *citing **Jae Lee***, 137 S. Ct. at 1968. At the time of his plea, he had lived in the United States with his family for two decades. At the change-of-plea hearing, his counsel noted his request for a prison placement close to his family, due to travel difficulties. There is no indication of ties to another country. True, he faced around five more years in prison from a conviction on all counts at trial (if the two counts had not been dismissed per the plea agreement). However, "deportation is 'a particularly severe penalty,' which may be of greater

concern to a convicted alien than 'any potential jail sentence.'" ***Sessions v. Dimaya***, 138 S. Ct. 1204, 1213 (2018), *quoting **Jae Lee***, 137 S. Ct. at 1968. At this stage, sufficient evidence supports his assertions of prejudice. *See **Jae Lee***, 137 S. Ct. at 1968–69 (defendant demonstrated prejudice from counsel's misadvice "he would not be deported if he pleaded guilty" where "deportation [was] the 'determinative issue' . . . in plea discussions," he "had strong connections to this country and no other," and "the consequences of taking a chance at trial were not markedly harsher than pleading").

The Government argues that contemporaneous evidence contradicts Dat's assertion he would not have pled guilty if his lawyer had properly advised him. As the district court noted, he acknowledged in his plea agreement that "there are or may be collateral consequences to any conviction to include but not limited to immigration." In his Petition to Enter a Plea of Guilty, he acknowledged that a guilty plea in "most federal felony cases" results in permanent removal. And at his change-of-plea hearing, he affirmed he was aware his conviction "could affect" his immigration status and had discussed the matter with his attorney. However, his counsel's alleged misadvice specifically undermined these equivocal warnings. They informed Dat of a general possibility of immigration consequences. They do not necessarily contradict or correct his counsel's alleged misadvice he would not suffer those consequences in his case. *Compare **Doe***, 915 F.3d at 913 (counsel's misadvice—that deportation was not a mandatory result of the guilty plea—not remedied where judge asked if defendant understood he "may be deported" and did not inform him of the "mandatory consequences" of his plea to an aggravated felony), *and **United States v. Akinsade***, 686 F.3d 248, 254 (4th Cir. 2012) ("general and equivocal admonishment" that defendant's plea "*could* lead to deportation" was "insufficient to correct counsel's affirmative misadvice that [defendant's] crime was not categorically a deportable offense"), *with **United States v. Fazio***, 795 F.3d 421, 428 (3d Cir. 2015) (any error in counsel's failure to inform defendant his guilty plea subjected him to automatic deportation was cured by plea agreement and district

court's "in-depth colloquy," both of which "made clear that [defendant] was willing to plead guilty even if that plea would lead to automatic deportation"). The record here is inconclusive whether the plea documents or district court remedied counsel's misadvice.

The PSR noted Dat would be subject to "Administrative Removal," and immigration proceedings would commence upon his release. Dat accepted the PSR without objection; his counsel affirmed she discussed it with him. In *Abraham v. United States*, 699 F.3d 1050 (8th Cir. 2012), the defendant could not show prejudice when "the PSR indicated a likelihood that [the defendant] would be deported if convicted; [the defendant] confirmed that he had read the PSR, discussed it with his counsel, and understood it; and [the defendant] never moved to withdraw his guilty plea." *Abraham*, 699 F.3d at 1053 (alterations in original). *Abraham* is distinguishable. There, the defendant claimed counsel failed to "advise him that the offense 'virtually ensured' deportation." *Id.* Because the PSR remedied any failure by "clearly indicat[ing] his offense rendered him deportable," there was no reasonable probability that the result of the proceeding would have been different if counsel had "advised him of the immigration consequences of pleading guilty." *See id.*, *citing* **Padilla**, 559 U.S. at 366. Here, Dat asserts counsel misadvised he would *not* be deported. The PSR does not necessarily remedy this affirmative misadvice. Relying on counsel's advice, Dat could have reasonably believed he would not be deported in immigration proceedings. These assertions show an evidentiary hearing is required. *See* **Witthar v. United States**, 793 F.3d 920, 922 (8th Cir. 2015) ("[T]he general rule is that a hearing is necessary prior to the [§ 2255] motion's disposition if a factual dispute exists.").

At sentencing, counsel noted Dat had an immigration attorney and was dealing with immigration ramifications. The Government argues this shows he knew the deportation risk. In *United States v. Ramirez-Jimenez*, 907 F.3d 1091 (8th Cir. 2018), an ineffective-assistance claim failed because the defendant "surely knew"

-7-

deportation was likely based on the district court's and counsel's advice at the change-of-plea hearing, "[c]ombined with what [the defendant] already knew from his ICE custody and prior dealings with immigration officials." *Ramirez-Jimenez*, 907 F.3d at 1094. Dat, however, was not in ICE custody during this case. The scope of his immigration attorney's representation is not in the record, let alone the advice, if any. He asserts his plea counsel affirmatively misadvised him, and there is a factual dispute whether that misadvice was remedied. Unlike in *Ramirez-Jimenez*, the record here is inconclusive whether Dat "surely knew" deportation was likely.

The record does not conclusively show that Dat is entitled to no relief. The district court thus abused its discretion by denying relief without an evidentiary hearing. This court remands for an evidentiary hearing on Dat's ineffective-assistance claim.[1]

\* \* \* \* \* \* \*

The judgment is reversed, and the case remanded for proceedings consistent with this opinion.

_____

_____

[1]Dat's motion to supplement the record is denied as moot.