# United States Court of Appeals
### For the Eighth Circuit
_____

No. 19-3504
_____

Dilang Dat

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: October 20, 2020
Filed: December 29, 2020
_____

Before BENTON, SHEPHERD, and KELLY, Circuit Judges.
_____

BENTON, Circuit Judge.

Dilang N. Dat was convicted of robbery in violation of 18 U.S.C. § 1951. He moved to vacate his plea under 28 U.S.C. § 2255, asserting his trial counsel was ineffective by not advising that his plea was for a deportable offense. After an evidentiary hearing, the district court[1] denied the motion. Dat appeals. Having

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska, now deceased.

jurisdiction under 28 U.S.C. §§ 1291, 2253(c)(1), and Fed. R. App. P. 22(b)(1), this court affirms.

Dat, a South Sudanese citizen, was born in a Kenyan refugee camp in 1993. *Dat v. United States*, 920 F.3d 1192, 1193 (8th Cir. 2019). Admitted to the United States around 1994, he became a lawful permanent resident. *Id.*

Dat was indicted for two counts of robbery under 18 U.S.C. § 1951, and one count of brandishing a firearm in furtherance of a crime of violence under 18 U.S.C. § 924. *United States v. Dat*, 2019 WL 5538074, at *1 (D. Neb. 2019). He pled guilty to one robbery count. The other charges were dismissed, pursuant to a plea agreement. The district court sentenced him to 78 months in prison.

Dat's robbery conviction is an aggravated felony. *Dat*, 920 F.3d at 1194 ("aggravated felony" means "a crime of violence under 18 U.S.C. § 16 with a term of imprisonment of at least one year," which includes "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another"), *quoting* **8 U.S.C. § 1101(43)(F)**.

An aggravated felony conviction is a deportable offense. **8 U.S.C. § 1227(a)(2)(A)(iii)** ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); **8 U.S.C. § 1229b(a)(3)** (stating that an alien "convicted of any aggravated felony" is not eligible for cancellation of removal); *Chaidez v. United States*, 568 U.S. 342, 345 (2013) (stating that an aggravated felony conviction subjects an individual to "mandatory removal").

Dat moved to vacate his guilty plea, asserting ineffective assistance of counsel. He claimed that his attorney, Kyle Allen, assured him that his immigration status would not be affected by his plea. The district court denied the motion, without an evidentiary hearing. *See United States v. Dat*, 2017 WL 3608236 (D. Neb. 2017), *rev'd and remanded*, 920 F.3d 1192. This court disagreed. *Dat*, 920 F.3d at 1196.

At the hearing, Allen testified:

- she repeatedly told Dat the charges against him were "deportable offenses," subjecting him to deportation proceedings.

- she told him that "he could face immigration ramifications which could result in deportation."

- she never told him, his mother, or his fiancée that he would not be deported.

- she encouraged Dat to hire an immigration attorney, providing a name and contact information.

- before the plea hearing, she and Dat reviewed the Plea Petition and Plea Agreement. The Plea Petition says that non-U.S. citizens would be permanently removed from the U.S. if found guilty of most felony offenses. The Plea Agreement says, "Defendant acknowledges that there are or may be collateral consequences to any conviction to include but not limited to immigration . . . ."

- she and Dat reviewed the Presentence Investigation Report and Sentencing Recommendation; both state that immigration proceedings would commence after his release from custody.

The district court found Allen credible, and her responses forthright and consistent with other evidence in the record. *Dat*, 2019 WL 5538074, at \*3–4.

Dat testified that Allen advised that he would not be deported if he pled guilty. His mother and fiancée testified to the same effect. The district court found Dat not credible, because his testimony was evasive, conflicted with his prior sworn statements, and reflected a motive to vacate his plea. *Id.* at \*4–5. The district court found Dat's mother and fiancée not credible, as they had a motive to help him vacate his plea. *Id.*

Denying the motion to vacate, the district court ruled that Dat could not show that Allen's representation was objectively unreasonable or that her performance prejudiced him. *Id.* at \*7.

This court reviews de novo the district court's legal determinations, and for clear error its findings of fact. *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (stating that an ineffective assistance of counsel claim "raises mixed questions of law and fact."). On appeal, this court defers to the district court's credibility determinations. *Id.*; *United States v. Cervantes*, 929 F.3d 535, 539 (8th Cir. 2019) (stating that "the district court's 'findings regarding the credibility of witnesses are virtually unreviewable on appeal.' "), *quoting United States v. Santana*, 150 F.3d 860, 864 (8th Cir. 1998).

The Sixth Amendment guarantees "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984), *quoting McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To establish ineffective assistance during plea negotiations, "a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' and that he was prejudiced as a result." *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017), *quoting Strickland*, 466 U.S. at 688. The defendant "bears the burden to overcome the strong presumption that counsel's performance was reasonable." *Thomas v. United States*, 737 F.3d 1202, 1207 (8th Cir. 2013).

Dat must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *White v. Dingle*, 757 F.3d 750, 752 (8th Cir. 2014), *quoting Strickland*, 466 U.S. at 687. Defense attorneys "have a duty to inform clients about the possible immigration consequences of pleading guilty in order to provide effective counsel under the Sixth Amendment." *Barajas v. United States*, 877 F.3d 378, 380 (8th Cir. 2017), *citing Padilla v. Kentucky*, 559 U.S. 356, 374 (2010). Unreasonableness may be established if the defense attorney failed to "inform clients about the possible

immigration consequences of pleading guilty." ***Dat***, 920 F.3d at 1194, *quoting* ***Barajas***, 877 F.3d at 380.

The district court found that Allen repeatedly told Dat he was charged with deportable offenses and subject to deportation proceedings if convicted. ***Dat***, 2019 WL 5538074, at \*7. She did not assure him he would not be deported. ***Id.*** at \*3. The district court found Allen credible. ***Id.*** at \*4. While Dat, his mother, and his fiancée testified to the contrary, the district court found them not credible. ***Id.*** at \*4–5. The district court's credibility determinations and findings of fact are entitled to this court's deference. *See* ***Walking Eagle***, 742 F.3d at 1082.

Dat argues that Allen's representation was unreasonable because she did not inform him that his deportation was a virtual certainty. Dat stresses that at the hearing, Allen admitted she didn't tell him the "virtual certainty" of deportation if convicted. *See* ***United States v. Bonilla***, 637 F.3d 980, 984 (9th Cir. 2011) (stating that a "criminal defendant who faces almost certain deportation is entitled to know more than that it is *possible* that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty.") (emphasis in original). *See generally* ***Padilla***, 559 U.S. at 369 ("[W]hen the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear."). According to Dat, telling him "he could face immigration ramifications which could result in deportation" did not convey the virtual certainty of his deportation.

It was objectively reasonable for Allen to tell Dat that he "could" face immigration ramifications that "could" result in deportation. In *Padilla*, the Supreme Court held that counsel must advise the defendant that "his conviction would make him 'deportable' under 8 U.S.C. § 1227(a)(2)(B)(I) if he pleaded guilty, not that deportation or removal was either mandatory or certain." ***United States v. Ramirez-Jimenez***, 907 F.3d 1091, 1094 (8th Cir. 2018) (per curiam). *Cf.* ***Chaidez***, 568 U.S. at 345–46 (stating that under *Padilla*, "criminal defense attorneys must inform non-citizen clients of the *risks* of deportation arising from guilty pleas.") (emphasis added). An alien with a deportable conviction may still seek

"relief from removal by providing evidence that he is eligible for asylum, withholding of removal, or relief under the Convention Against Torture." ***Ramirez-Jimenez***, 907 F.3d at 1094. These "immigration law complexities" should "caution any criminal defense attorney not to advise a defendant considering whether to plead guilty that the result of a post-conviction, contested removal proceeding is clear and certain." ***Id.***

On the facts here, Allen was not required to tell Dat that his deportation was virtually certain. *See **id.*** at 1093–94 (rejecting an ineffective assistance claim where trial counsel told the defendant he "may be deported" for conviction of a deportable offense, but did not add that his conviction made him "subject to mandatory deportation"). Allen's legal representation was objectively reasonable.[2]

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

---

[2]This court thus need not address the issue of prejudice. *See **United States v. Lee***, 715 F.3d 215, 221 (8th Cir. 2013) ("Failure to establish either *Strickland* prong is fatal to an ineffective-assistance claim."), *quoting **Worthington v. Roper***, 631 F.3d 487, 498 (8th Cir. 2011).