# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-3286
_____

Philip Myers,

*Petitioner*,

v.

Pamela Bondi, Attorney General of the United States,

*Respondent.*[*]

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: March 19, 2025
Filed: September 8, 2025

_____

Before COLLOTON, Chief Judge, ERICKSON and GRASZ, Circuit Judges.

_____

COLLOTON, Chief Judge.

Philip Myers petitions for review of an order of the Board of Immigration Appeals denying his motion to reopen removal proceedings. We conclude that the

---

[*]Attorney General Bondi is substituted for her predecessor under Federal Rule of Appellate Procedure 43(c)(2).

agency did not abuse its discretion, so we deny the petition. Insofar as Myers claims that he is a national of the United States, we reject his argument that one of the requirements for automatic citizenship is unconstitutional.

I.

Myers, a native and citizen of Liberia born in August 1988, was adopted by Felicia Myers in November 1995. Myers entered the United States in September 1996 as a derivative beneficiary of his adoptive mother's visa. His adoptive mother became a naturalized United States citizen in July 2004. Myers claims that his adoptive mother sexually abused him for many years, both in Africa and in the United States.

Since his admission to the United States, Myers has sustained criminal convictions for attempted receipt of stolen property and attempted financial transaction card fraud in Minnesota, second degree burglary in Minnesota, and interference with commerce by robbery under the Hobbs Act. In 2021, the Department of Homeland Security initiated removal proceedings against Myers based on conviction of an aggravated felony and conviction of two or more crimes involving moral turpitude. *See* 8 U.S.C. §§ 1227(a)(2)(A)(ii), (iii), 1101(a)(43)(M), (G), (F), (U) (2021); *Dat v. United States*, 920 F.3d 1192, 1194 (8th Cir. 2019). An immigration judge sustained the charges of removability.

Myers appeared *pro se* before an immigration judge the following week. At the hearing, Myers said that he wanted to pursue a claim of derivative citizenship from his adoptive mother. The immigration judge explained that he did not have authority to grant Myers citizenship, that such authority resides exclusively with the United States Citizenship and Immigration Services (USCIS), and that the USCIS already had determined that Myers was not eligible for derivative citizenship. In 2010, the USCIS rejected Myers's claim because he failed to adduce evidence that he

was in his adoptive mother's legal and physical custody when she was naturalized. *See* 8 U.S.C. § 1431(a)(3) (2004); *see also id.* §§ 1431(b), 1101(b)(1)(E)(i).

The immigration judge next made an "initial determination" that Myers was mentally competent to undergo removal proceedings *pro se* without safeguards. The judge found that Myers was oriented to time and place, understood why he was in immigration court, and comprehended the nature of the proceedings. *See In re M-A-M-*, 25 I. & N. Dec. 474, 479 (B.I.A. 2011). The judge then granted Myers a two-week continuance to complete an application for relief from removal.

When Myers appeared at his next hearing *pro se* without a completed application, the immigration judge granted a continuance. At the next hearing, Myers was represented by counsel. Myers then secured several continuances to investigate and pursue his derivative citizenship claim. In December 2021, Myers's attorney withdrew due to "a fundamental disagreement about the viability" of a renewed application for derivative citizenship. The immigration judge granted Myers two more continuances to seek another attorney and to complete an application for relief from removal. In January 2022, Myers filed a *pro se* application for asylum, withholding of removal, and protection under the Convention Against Torture.

In February 2022, the immigration judge decided that Myers was competent to proceed without counsel. The judge explained that he considered medical documentation submitted by the Department, his observations of Myers's conduct during the course of removal proceedings, and his observations of Myers's interactions with his counsel. The immigration judge then denied Myers's application for relief from removal, and ordered him removed to Liberia.

Myers filed a *pro se* notice of appeal to the Board. He argued that the immigration judge's assessment of his competency was procedurally inadequate and that the judge erred in determining that he was competent to proceed *pro se* without

safeguards. In a subsequent letter to the Board, Myers reiterated that he should have been found incompetent to proceed without counsel based on his medical record, his statements during removal proceedings, and a determination of a federal district court in 2012 that he was incompetent to stand trial on federal robbery charges due to his "diminished mental capacity."

The Board determined that the immigration judge's competency finding was not clearly erroneous and dismissed the appeal. The Board concluded that Myers had a rational and factual understanding of the nature and object of the proceedings, was able to consult with an attorney, and had the opportunity to present evidence and ask questions. *See In re M-A-M-*, 25 I. & N. Dec. at 479. The Board also observed that Myers did not challenge his removability or the immigration judge's denial of his application for relief from removal.

Myers then obtained counsel and moved to reopen removal proceedings on four grounds: (1) he had a pending motion with the USCIS to reopen and reconsider the denial of his application for derivative citizenship; (2) the agency erroneously concluded that he was competent to undergo removal proceedings without an attorney; (3) the agency erred by denying his application for relief from removal because Myers is homosexual and could be persecuted in Liberia, and Myers had submitted an amended application for asylum and withholding of removal; and (4) he had a pending application with the USCIS for a T-visa for victims of sex trafficking based on the claim that he was a victim of sex trafficking by his adoptive mother.

Myers moved to stay removal pending adjudication of his motion to reopen removal proceedings and his applications with the USCIS. The Board denied the motion, and Myers was removed to Liberia in March 2023. The Board then denied Myers's motion to reopen, and Myers petitions for review.

II.

Before addressing Myers's challenges to the Board's decision, we observe that he appears to claim within those challenges that he is a citizen of the United States. Myers maintains that he derived citizenship from his adoptive mother's naturalization in July 2004. *See* 8 U.S.C. § 1431 (2004). Even where the USCIS has previously rejected a claim of citizenship, a petitioner may assert citizenship defensively in response to removal proceedings, and may challenge a denial in the court of appeals. *Garza-Flores v. Mayorkas*, 38 F.4th 440, 443 (5th Cir. 2022); *Anderson v. Holder*, 673 F.3d 1089, 1096 & n.6 (9th Cir. 2012). When a petitioner claims to be a national of the United States, the court of appeals must determine *de novo* whether there is a genuine issue of material fact about the petitioner's nationality, and either decide the claim or transfer the proceeding to a district court. 8 U.S.C. § 1252(b)(5) (2025); *see Moussa v. Immigr. & Naturalization Serv.*, 302 F.3d 823, 827 (8th Cir. 2002); *Shepherd v. Holder*, 678 F.3d 1171, 1182 (10th Cir. 2012).

A "child" born outside the United States automatically becomes a citizen of the United States "when all of the following conditions have been fulfilled: (1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization[;] (2) The child is under the age of eighteen years[;] (3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence." 8 U.S.C. § 1431(a) (2004). Myers asserts that he satisfies these requirements because his adoptive mother became a citizen on July 7, 2004, when he was under the age of eighteen, and he resided in the legal and physical custody of his mother when she was naturalized. Although the USCIS concluded that Myers presented insufficient evidence that he lived with his mother on July 7, 2004, Myers testified in the removal proceeding that "I was living with my mom when she got her citizenship." A.R. 808. Myers's testimony thus may create a genuine issue of material fact about whether he satisfies the requirements of § 1431(a).

-5-

The provisions of § 1431(a), however, apply to a "child" adopted by a United States citizen parent only in specified circumstances—*i.e.*, "if the child satisfies the requirements applicable to adopted children under [8 U.S.C. § 1101(b)(1)]." 8 U.S.C. § 1431(b) (2004). As of 2004, when Myers's adoptive mother became a naturalized citizen, § 1101(b)(1) defined "child" to include "a child adopted while under the age of sixteen years *if the child has been in the legal custody of, and resided with, the adopting parent or parents for at least two years*." *Id.* § 1101(b)(1)(E)(i) (emphasis added).

Myers does not argue that he had been in the legal custody of, and resided with, his adopting parent for at least two years. He contends, rather, that the two-year custody and residency requirement is unconstitutional as applied to a child who was abused by the adoptive parent. He observes that Congress in 2006 created an exception to the two-year requirement "if the child has been battered or subject to extreme cruelty by the adopting parent . . . residing in the same household." *Id.* § 1101(b)(1)(E)(i) (2006); Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, § 805(d), 119 Stat. 2960, 3056-57 (2006). Myers contends that it would be unconstitutional to deny him a comparable exception as of 2004.

The Constitution vests Congress with the "Power . . . [t]o establish an uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and the "scope of judicial inquiry into immigration legislation" is "limited." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977). The 2004 version of § 1101(b)(1)(E)(i) reflects a legislative policy decision to distinguish between adopted children who have lived in the custody of their adopting parents for at least two years and those who have not, without inquiry into the conditions of life in the home. Although "it could be argued that the line should have been drawn at a different point," *id*. at 798, it is not the proper role of the courts "to probe and test the justifications for the legislative decision" and "substitute our political judgment for that of the Congress." *Id*. at 798-99. As with the distinction

between natural mothers and natural fathers in *Fiallo*, we conclude that the applicable definition of "child" and its two-year custody requirement is not unconstitutional.

For these reasons, Myers has not presented a genuine issue of material fact on the question whether he derived citizenship from his adoptive mother's naturalization. His implicit nationality claim is therefore denied. *See* 8 U.S.C. § 1252(b)(5)(A) (2025).

## III.

We review the Board's denial of motions to reopen or reconsider for abuse of discretion. *Mshihiri v. Holder*, 753 F.3d 785, 789 (8th Cir. 2014). Because Myers is an alien convicted of crimes covered in § 1227(a)(2)(A)(ii) & (iii), we have jurisdiction to consider only constitutional claims and questions of law. *See* 8 U.S.C. § 1252(a)(2)(C)-(D) (2025).

## A.

Myers first contends that the Board should have granted his motion to reopen removal proceedings based on his pending motion with the USCIS to reopen and reconsider its previous denial of his application for derivative citizenship. To justify reopening, Myers was required to adduce new evidence that was neither available nor discoverable before the previous hearing and would be material to the outcome of the proceeding. 8 C.F.R. § 1003.2(c)(1) (2021); *see also Xiu Ling Chen v. Holder*, 751 F.3d 876, 878 (8th Cir. 2014).

The immigration judge found that the USCIS previously rejected Myers's application for derivative citizenship because he failed to adduce evidence showing he was in his adoptive mother's physical and legal custody at some point between her naturalization in July 2004 and his eighteenth birthday in August 2006. As the Board

observed, Myers did not identify new evidence on this issue in his November 2022 motion to reopen with the USCIS or his November 2022 motion to reopen with the Board. Accordingly, the Board did not abuse its discretion by denying his motion to reopen on this point.

## B.

Myers next seeks review of the agency's determination that he was mentally competent to participate in removal proceedings *pro se* without safeguards. In his motion of November 2022, Myers argued that the Board should reopen his removal proceedings because he was not competent during the hearing and required the safeguard of an attorney. The Board construed the filing as a motion to reconsider the Board's decision of August 12, 2022, which affirmed the immigration judge's competency determination, because Myers raised the same factual and legal arguments as the filings that the Board addressed in its August decision. *Compare* 8 C.F.R. § 1003.2(c)(1) (2021) (a motion to reopen must state new facts), *with id.* § 1003.2(b)(1) (a motion to reconsider must specify factual or legal errors in the prior Board decision); *In re O-S-G-*, 24 I. & N. Dec. 56, 58 (B.I.A. 2006) (a petitioner cannot just resubmit, in essence, the same brief and seek reconsideration by generally alleging error in prior decision). The Board denied Myers's motion regarding the agency's competency determination because he failed to meet the thirty-day filing deadline for motions to reconsider. *See* 8 C.F.R. § 1003.2(b)(2) (2021).

In his opening brief, Myers does not challenge the Board's construction of his November 2022 filing as a motion to reconsider. He addresses only the underlying merits of the agency's competency determination. Myers thus waived any challenge to a dispositive basis for the Board's denial of his November 2022 motion, and we need not address the Board's alternative rationale. *See Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004).

## C.

Myers next complains that the agency erroneously denied his request for relief from removal based on fear of persecution in Liberia on account of his sexual orientation. As the Board concluded, however, Myers failed to address the immigration judge's conclusion that he is ineligible for asylum and withholding of removal because he has been convicted of a "particularly serious crime" and sentenced to at least five years' imprisonment. *See* 8 U.S.C. §§ 1158(b)(2)(A)(ii), (B)(i); 1231(b)(3)(B)(ii), (iv) (2021); 8 C.F.R. § 1208.16(d)(2) (2021). Myers did not properly exhaust a claim under the Convention Against Torture before the Board in August 2022 and November 2022, so we do not consider that issue on review. *See* 8 U.S.C. § 1252(d)(1) (2025); *Abdi Omar v. Barr*, 962 F.3d 1061, 1063 (8th Cir. 2020).

## D.

Myers argues finally that the Board abused its discretion by denying his motion to reopen removal proceedings on the basis of his pending application for a T-visa. To be eligible for a T-visa, an applicant must be physically present in the United States or certain of its territories. 8 U.S.C. § 1101(a)(15)(T)(i)(II) (2021); 8 C.F.R. § 214.11(b)(2) (2021). As Myers acknowledges, however, the USCIS denied his application for a T-visa in June 2024 because he was removed to Liberia in March 2023. Because Myers is no longer physically present in the United States, and his application for the visa has been denied, his challenge to the Board's denial of his motion to reopen on this ground is moot. *See Mendoza-Flores v. Rosen*, 983 F.3d 845, 847 (5th Cir. 2020).

\* \* \*

The petition for review is denied.

_____

-9-